**Troy Anderson GIVENS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 41983.**

Court of Criminal Appeals of Texas.

April 2, 1969.

McWhorter, Cobb & Johnson by D. Thomas Johnson, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty., Lubbock, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

BELCHER, Judge.

The conviction is for robbery by firearms; the punishment, ten years.

The appellant's sole contention is:

"The trial court erred in denying appellant's motion to dismiss the indictment against him because the evidence adduced in the trial court was insufficient to convict appellant of robbery by firearms in that there was no legally sufficient testimony placing the appellant at the scene of the crime."

The insufficiency of the evidence to support the offense alleged will not alone invalidate an indictment and call for its dismissal.

The ground of error as presented will be treated as challenging the sufficiency of the evidence to support the conviction of robbery with firearms as alleged.

The court in its charge submitted the issue of whether Billy Ross Thomas was an accomplice witness; and further charged the jury that Daniel Johnson was an accomplice witness as a matter of law.

While testifying for the state, Billy Ross Thomas identified the appellant as the person who hired him (Thomas) to take the appellant, Emmit Livingston, and Daniel Johnson to a place near the service station which was robbed, and testified that when the motor failed in his 1959 blue Ford close to some tall weeds and a railroad track, the appellant and the other two persons walked off through the high weeds. While Thomas was trying to start his car he heard some shooting, lots of hollering, and saw a person come running from the direction of the service station who tried to get in his car, removed his T-shirt, threw it on the ground beside the car and said several times, "I ain't done nothing," and then ran. Thomas knew the appellant

and Livingston, but did not know the other man's name.

Daniel Johnson, an accomplice witness, testified that after they left Billy at the car, he, the appellant and Livingston walked to the service station, and while the appellant was on the side of the service station "supposedly" watching, he and Livingston entered the service station and he asked the operator for some change, then Livingston told the operator to move back, and next told Johnson to get the money; that as he (Johnson) got the money from the cash register he heard some shots and ran; that he had seen Livingston with a gun before they went to the station; that as he ran by Billy's car he threw a pair of sunglasses, a scarf, a T-shirt and the money by the car. While testifying, Johnson identified a scarf and a pair of sunglasses as the ones he threw by the car.

Officer Aycock testified that while on patrol, he approached the corner of the service station building and saw a man go to the cash register, open it, and begin taking the money from it. On going to the front door, Aycock saw Emmit Livingston, a man he knew, holding a gun on the operator of the station. Livingston shot toward Aycock, who jumped by a pump, and Livingston shot at Aycock again as Livingston came out the door. Aycock shot Livingston two times. Aycock pursued Livingston about thirty yards to where Livingston entered some tall weeds, and then on returning to his car he saw another man running. Aycock could see three persons when he arrived at the station, but never recognized either until the man (Livingston) with the gun turned around.

Officer Shaw testified that on arriving at the scene of the robbery he learned of the direction the man ran; that he located a 1959 blue Ford near some tall weeds which Billy Ross Thomas was trying to start its motor; that he found a bandana, a T-shirt and a five-dollar bill by the Ford, and he also found some money ($64.50) scattered in the weeds and a pair of sunglasses nearby.

Officer Mitchell apprehended Emmit Livingston shortly after the robbery and determined that he had been shot in the leg and stomach.

Emerson Young, step-father of the appellant, testified that when the officers came to his house asking for the appellant, he told them he was not there and then went in search of him, and on his return home the appellant was there.

The witness, Young, testified in part as follows:

"Q And where did he (appellant) say he had been?

"A He was riding with them.

"Q With who?

"A With Emmit. (Livingston)

"Q Okay. And what did he say happened at the time—at this point, I am asking you what he said, but what did he say happened on that night?

"A He said that they were trying to holdup a filling station and he jumped out and ran.

"Q Okay. Now, who was he talking about when he said they were trying to holdup a filling station?

"A Emmit and this other boy with Emmit."

The appellant did not testify or offer any testimony in his behalf.

Assuming that Thomas is an accomplice, it is concluded that the evidence sufficiently corroborates his testimony and that of the accomplice Johnson.

The appellant contends that the state is bound by his statement to his father which it introduced, to-wit: "that they were trying to holdup a filling station and he jumped out and ran."

The court charged the jury on the law applicable to principals.

The appellant did not object to the failure of the court to charge the jury as he argues in his brief that if he "was not at the scene of the crime and fled from the crime rather than participating in it," to find him not guilty.

 The evidence is sufficient to warrant the conclusion that the appellant was acting as a principal and supports the conviction.

The judgment is affirmed